| UNITED STATES DISTRICT COURT | C/M |
| EASTERN DISTRICT OF NEW YORK | |

---------------------------------------------------------- X
                                                           :
MICHAEL CRUZ,                                              :
                             Petitioner,                   :
                                                           :     **MEMORANDUM**
            - against -                                    :     **DECISION AND ORDER**
                                                           :
M. KIRKPATRICK,                                            :     17 Civ. 3771 (BMC)
                                                           :
                             Respondent.                   :
                                                           :
---------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner seeks federal habeas corpus relief under 28 U.S.C. § 2254 from his conviction for first degree murder, first degree attempted robbery, and second degree weapons possession. The facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, as one member of a group of men who determined to randomly rob someone on the street, petitioner fired five shots at the victim as the victim fled, killing him. Two police officers, having been alerted to the attack, saw petitioner near the scene throw a gun under a parked car, which they retrieved, still warm, at the time they arrested him, and which tested positive as the murder weapon with petitioner's DNA on it. In addition, petitioner confessed twice to the police after he was arrested (although he challenges the admissibility of these confessions), and once to his grandmother on a recorded call from jail.

He raises three points of error: (1) the suppression court erred in crediting the testimony of the detective who took his confession, and without that error, his confession should have been suppressed; (2) the trial court erred in restricting cross-examination of the detective about another case in which he had been involved where he testified to similar, incredible circumstances in obtaining a confession; and (3) petitioner's appellate counsel was

constitutionally ineffective for failing to (a) argue insufficiency of the evidence of intent to kill as to the first degree murder count, and (b) object to the jury instructions because the jury instructions did not adequately distinguish between first and second degree murder.

**I. Crediting the Detective's Testimony**

The detective who obtained petitioner's confessions knew petitioner as the victim from a prior shooting. According to that detective, after his arrest in the instant case, he read petitioner his Miranda rights, and petitioner gave an exculpatory statement, acknowledging the attack by his friends but stating that he had removed himself from it. He then said he did not want to talk about it any further, and the detective left the room to interview other witnesses and conduct lineups involving petitioner's accomplices.

Nine hours later, the detective testified, petitioner knocked on the door of the interview room. The detective, who was in the next room obtaining a statement from another witness, went to petitioner, and petitioner told him that he wanted to tell the detective what really happened. He then gave a full confession orally, after which he wrote out his confession and signed it. The next morning, after additional Miranda warnings, he gave the same video confession to an Assistant District Attorney ("ADA").

Petitioner argued that it was simply not credible that he would have changed his mind over the nine-hour period, and that the suppression court erred in crediting the detective's testimony. The Appellate Division rejected his argument, holding that

> the testimony given by a detective at the suppression hearing was not manifestly untrue or contrary to experience, and the testimony did not appear to have been patently tailored to nullify constitutional objections. Although, upon the exercise of our factual review power, this Court may make its own findings of fact if it determines that the hearing court incorrectly assessed the evidence, we cannot say that the hearing court was incorrect in crediting the detective's testimony.

2

People v. Cruz, 131 A.D.3d 706, 706-07, 15 N.Y.S.3d 692 (2d Dep't) (citations omitted), leave to app. denied, 26 N.Y.3d 103, 22 N.Y.S.3d 168 (2015) (table).

The state court's decision to credit the detective's testimony resolves a factual dispute, and therefore attracts the restricted review standard of 28 U.S.C. § 2254(d)(2). The statute provides that in reviewing a state court conviction, the federal habeas corpus court can only grant relief from a factual determination if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Burt v. Titlow, 134 S. Ct. 10, 15 (2013). The review standard is "substantially higher," and even if a determination of fact turns out be incorrect, it can still be reasonable. Schriro v. Landrigan, 550 U.S. 465, 473 (2007). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" Wood v. Allen, 558 U.S. 290, 301 (2010) (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006)). Rather, a petitioner must prove that the state court's finding was "objectively unreasonable." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Objective unreasonableness means that the state court's factual determination "cannot reasonably be reconciled" with the record that was before the state court. Jones v. Murphy, 694 F.3d 225, 235 (2d Cir. 2012).

Petitioner does not come anywhere near meeting this standard. He simply asserted that it was "patently incredible" that he would have changed his mind between the time of that he denied participation and his first inculpatory statement. But such spontaneous changes of heart

3

in the course of pre-trial confinements are not at all uncommon.  In this case, as the ADA pointed out to the Appellate Division, petitioner knew that the detective was conducting lineups.  There was no evidence that petitioner knew that the victim had died, which would have made a confession seem less consequential than it ultimately was.  Petitioner also knew that the police had seen him toss the gun.  His reflection on these facts over the course of his confinement could easily have made him realize that the jig was up.

The fact that a more-than-reasonable argument can be made for crediting the detective's testimony removes this claim from the scope of federal habeas corpus review.  Thus, petitioner's point of error is denied.

## II.     Restriction on Cross-Examination

Petitioner's second argument on direct appeal is effectively built on his first.  By serendipity, his trial counsel, in another, unrelated case (referred to as the "Willie Mays" case), had cross-examined the same detective who had obtained petitioner's confession.  In the Willie Mays case, according to trial counsel, the detective had testified that, after first denying involvement, Willie Mays had then knocked on the interview room door and told the detective that he had changed his mind and wanted to confess.

The purpose of this proffer was to cast doubt on whether the detective's description of the circumstances under which petitioner confessed should be believed.  However, the trial court sustained the ADA's objections and precluded the cross-examination on that topic, finding that any evidence concerning the detective's actions in the Willie Mays case was collateral.  It further noted that it was sure there were differences between the Willie Mays case and petitioner's case.  For his part, although he made a record on the point, trial counsel never suggested that the

detective had falsely testified in the Willie Mays case. The Appellate Division affirmed, holding that the trial court

> has broad discretion to limit cross-examination when questions are repetitive, irrelevant or only marginally relevant, concern collateral issues, or threaten to mislead the jury. Contrary to the defendant's contention, the trial court did not deprive him of his right to confront the witnesses against him by limiting his cross-examination of the detective at trial.

Cruz, 131 A.D.3d at 707, 15 N.Y.S.3d at 692 (internal quotation marks and citations omitted).

Because the Appellate Division decided this point on the merits, its decision is subject to review under 28 U.S.C. § 2254(d)(1). That subsection requires petitioner to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the Antiterrorism and Effective Death Penalty Act ("AEDPA") standard of review is extremely narrow, and it is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal[.]" Ryan v. Gonzales, 586 U.S. 57, 75 (2013). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter,

562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since Harrington, it has repeatedly admonished the Courts of Appeal for not affording sufficient deference to state court determinations. See, e.g., White v. Wheeler, 136 S. Ct. 456, 460 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court . . . . '" (quoting Burt, 134 S. Ct. at 16)).

The Confrontation Clause is violated when a defendant is "prohibited from engaging in otherwise appropriate cross-examination designed . . . 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" Delaware v. Van Ardsall, 475 U.S. 673, 680 (1986) (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)). Although the Confrontation Clause protects an accused's right to cross-examine witnesses against him, including on matters that may demonstrate bias or a motive to testify falsely, that right is not absolute. See Davis, 415 U.S. at 315-16. Trial judges "retain wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness," Michigan v. Lucas, 500 U.S. 145, 149 (1991) (internal quotation marks omitted), so long as the restriction is not "arbitrary or disproportionate to the purpose[ ] [it] is designed to serve." Id. at 151 (internal quotation marks omitted). The Confrontation Clause does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Van Ardsall, 475 U.S. at 679 (internal quotation marks omitted).

Although a reasonable argument can be made that the trial court should have allowed the requested cross-examination, I cannot find that its refusal to do so was constitutional error under the narrow standard of AEDPA review. Trial courts have broad discretion to limit cross-

6

examination, and to find a constitutional violation under AEDPA, I would have to find that the trial court's decision was something beyond an abuse of discretion, perhaps gross abuse or a ruling that was not rationally defensible. Perhaps the best way to articulate this standard would be "patent unreasonableness." I do not see that here.

There were valid reasons to restrict the cross-examination, stemming from the fact that whenever a trial lawyer seeks to introduce proceedings from an unrelated case, there is a risk that the jury will get distracted from the case that trial counsel is actually trying to the case that trial counsel would like the jury to consider. If trial counsel wants to point out the similarities between two cases, then the prosecution must have the right to point out the differences. If trial counsel identifies one other case where a police witness obtained a confession under allegedly similar circumstances, then, to avoid a misperception of context by the jury, the prosecution must have the right to point out that there were dozens or hundreds of other confessions that the detective obtained that have no similarity at all to the circumstances in which the subject confession was obtained. And it may be necessary to pause the trial to allow the prosecution to obtain sufficient information to rehabilitate the witness. Through this cascading need to compare or contrast the other-case evidence, the risk of a mini-trial emerges that would divert the jury from the issue at hand.

It would be one thing if the detective had been found to have been lying in the <u>Willie Mays</u> case by, for example, a suppression court judge, a CCRB review board, or a judgment in a civil case. Had that been the case, then restricting cross-examination in the way the trial court did may have constituted an unreasonable application of Supreme Court authority. But not only did defense counsel fail to make a proffer that anything like that had occurred, he did not even contend that the detective had been lying in the <u>Willie Mays</u> case, and there was no suggestion

7

that he had even argued that in the Willie Mays case itself. Rather, he expected his allegations of similarity between the two confessions to speak for themselves. Again, however, this would have opened the door for the prosecutor to rehabilitate the detective, and I cannot say that no "fairminded jurist[]," Harrington, 562 U.S. at 101, could conclude the trial court acted within its discretion in seeking to avert a sideshow.

Under the AEDPA standard of review, I cannot find that the trial court unreasonably applied Supreme Court authority in limiting cross-examination.

### III. Ineffective Assistance of Appellate Counsel

Petitioner brought a *coram nobis* motion in the Appellate Division, contending that his appellate counsel was constitutionally ineffective for failing to challenge the sufficiency of the evidence on appeal and for failing to argue that there was error in the jury instructions. The Appellate Division summarily rejected this claim, People v. Cruz, 141 A.D.3d 601, 34 N.Y.S.3d 897 (2d Dep't), leave to app. denied, 28 N.Y.3d 102, 45 N.Y.S.3d 378 (2016) (table).

To demonstrate ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984), a petitioner must show two things: (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. Performance will be deemed deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. If there is a reasonable probability that the outcome might have been different as a result of a legal error, the petitioner has established prejudice and is entitled to relief. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1910-11 (2017); Lafler v. Cooper, 566 U.S. 156, 166 (2012); Glover v. United States, 531 U.S. 198, 203-04 (2001). An ineffective assistance of counsel claim must be denied if the petitioner fails to

8

make a sufficient showing under either of the Strickland prongs.  See Strickland, 466 U.S. at 697.

The Strickland standard is fully applicable to ineffective assistance of appellate counsel claims.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  To state a claim of ineffective assistance of appellate counsel, a petitioner must show (1) "that his counsel was objectively unreasonable in failing to find arguable issues to appeal" and (2) "a reasonable probability that, but for his counsel's unreasonable failure to" raise an issue on appeal "he would have prevailed on his appeal."  Smith v. Robbins, 528 U.S. 259, 285 (2000) (citations omitted).  "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court."  Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994) (internal quotation marks and brackets omitted).

"In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."  Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (internal quotation marks omitted).  Because one of the main functions of appellate counsel is to "winnow[] out weaker arguments on appeal," Jones v. Barnes, 463 U.S. 745, 751 (1983), counsel is not required to present every nonfrivolous claim on behalf of a defendant appealing his or her conviction, see Smith, 528 U.S. at 288 ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.").

Moreover, because the Appellate Division decided this issue on the merits, and because there is a strong presumption under Strickland that counsel's assistance was effective, the

standard of judicial review applicable to ineffective assistance of counsel claims under § 2254(d) is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

Right at the outset, petitioner encounters an obstacle that may be insurmountable in any case of ineffective assistance of appellate counsel and certainly is in this one – neither of the claims that he asserts appellate counsel should have raised were preserved for appeal. It is overwhelmingly likely, therefore, that if his appellate counsel had raised those claims, the Appellate Division would have rejected them as procedurally barred. It is true that if a claim is unpreserved for appellate review, a party can still appeal to the Appellate Division's "interest of justice" jurisdiction, N.Y. Crim. Proc. L. § 470.15(3), but for the reasons set forth below, I see no chance that the Appellate Division would have exercised that discretion in petitioner's favor.

First, appellate counsel's decision to omit an insufficiency of the evidence claim as to the first degree murder charge was not a decision to omit a non-frivolous argument (which, as noted above, is a decision appellate counsel is entitled to make) – it was a decision to omit a frivolous argument. Putting aside petitioner's written and videotaped confessions to the detective and the ADA, the police had seen him throw the still-warm gun under a car shortly after the shooting, and it tested positive for his DNA (although there was other DNA on it as well). They had him on tape from jail confessing to his grandmother that it is was his gun and that he was the shooter: "I realize that what I did was wrong and I'm gonna have to do some time . . . I had the gun, grandma. That was my gun." In other recorded statements, he was caught musing about intimidating witnesses into not testifying and saying that he was not the only member of his family who had "bodied" someone.

The fact that petitioner testified that his confessions were coerced, that he was falsely making admissions to his grandmother to assure her that he was not taking the blame for

someone else, or that one of his group members had forced him to take the gun after the shooting, did not diminish the prosecution's case for purposes of measuring its legal sufficiency. For appellate counsel to have raised this unpreserved issue would have been inexplicable.

Petitioner's jury trial claim was that the trial court did not adequately distinguish between the intent requirement in first degree murder as opposed to the intent requirement in second degree murder. It would have been almost as frivolous for appellate counsel to raise that claim.

In his *coram nobis* motion, petitioner tried to create a distinction between the intent required for first degree murder and second degree murder, and in some cases, there can be such a distinction. First degree murder requires the addition of some aggravating factor not necessary for second degree murder; in petitioner's case, the aggravating factor was the commission of an additional felony, *i.e.*, that he and friends intended to and did rob the victim before petitioner shot him.

Petitioner relied on People v. Cahill, 2 N.Y.3d 14, 777 N.Y.S.2d 332 (2003), which held that where the aggravating factor – the additional crime – was carried out solely for the purpose of committing the murder (the defendant in Cahill stole poison from a hospital for the purpose of murdering the victim in the hospital), there was no separate intent between the murder and the additional felony and first degree murder was not committed. But that has nothing to do with petitioner's case. The instructions charged the jury with finding, as to the robbery count, that he intended to commit a robbery, and, as to the first degree murder count, that he intended to commit a murder. One was not done for the purpose of achieving the other, as many robberies occur without death. Accordingly, the jury was charged that if he intentionally committed the murder without intentionally committing the robbery, then he would only be guilty of second degree murder. The instructions were perfectly clear on this point; indeed, as the ADA advised

11

the Appellate Division, the instructions were taken directly out of the New York's model Criminal Jury Instructions.

Thus, neither of the prongs required for relief under Strickland are met.

## CONCLUSION

The petition is denied and the case is dismissed. A certificate of appealability shall not issue as the petition presents no substantial questions. See 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                                                               _____
                                                                                                U.S.D.J.

Dated: Brooklyn, New York
        August 4, 2017